**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Paul Kaufmann,                                        Case No. 3:09 CV 2517

      Plaintiff,

v.

Ohio Edison Company,                          **MAGISTRATE'S REPORT AND**
                                      **RECOMMENDATION**

      Defendant.

      This case, filed pursuant to the Americans with Disability Act (ADA) and the Family Medical Leave Act (FMLA), was referred to the undersigned Magistrate for report and recommendation on all pretrial issues.  Pending is Defendant's Motion for Summary Judgment, Plaintiff's Opposition and Defendant's Reply (Docket Nos. 27, 29 & 39).  For the reasons that follow, the Magistrate recommends that the Court grant the Motion for Summary Judgment.

### JURISDICTION

      This Court has jurisdiction based upon 28 U.S.C. § 1331, because this action arises under the laws of the United States, specifically, the ADA providing relief from discrimination in employment on the basis of disability, 42 U.S.C. § 12101 et seq. and upon the FMLA, 29 U.S.C. § 2601 *et seq.*

### THE PARTIES

Plaintiff, a resident of Napoleon, Henry County, Ohio, is married and the father of four children (Docket Nos. 1 & 28, Exhibit 1, p. 5 of 127, 6 of 127).  His source of income is Social Security (Docket No. 28, Exhibit 1, p. 9 of 127).

Defendant is an energy company headquartered in Akron, Ohio.

### FACTUAL BACKGROUND

In the Fall 2005, Plaintiff commenced employment at Florida Power and Light.  He worked there for two years.  His wife maintained their residential property in Napoleon (Docket No. 28, Exhibit 1, pp. 14 of 127, 16 of 127).  When a lineman job opened at the reporting location in Sandusky, Ohio, Plaintiff applied and was awarded the position, subject to a probationary period of 15 months, relocation within 45 minutes of the reporting location and mandatory duty to respond to call-outs (Docket No. 28, Exhibit 1, pp. 16 of 127, 22 of 127, 72 of 127).  Plaintiff was awarded remuneration to relocate (Docket No. 28, Exhibit 1, p. 29 of 127).

Plaintiff commenced working in Sandusky on October 15, 2007 (Docket No. 28, Exhibit 1, p. 31 of 127; Docket No. 27, Exhibit A, ¶ 2).  He and his wife did not move within 45 minutes of the reporting location.  In fact, he commuted from Napoleon to Sandusky daily.  The distance from Napoleon to Sandusky, Ohio is approximately 95 miles (Docket No. 28, Exhibit 1, p. 25 of 127).  Plaintiff admitted that during the course of his employment, he never accepted a call-out (Docket No. 28, Exhibit 1, p. 28 of 127).

On March 31, 2008, Plaintiff underwent eye surgery.  He was released by his physician for full duty as of June 13, 2008 (Docket No. 28, Exhibit 1, pp. 35 of 127, 36 of 127).  At the time of

his leave, Plaintiff had worked 841.5 hours (Docket No. 17, Exhibit A, ¶ 4; Docket No. 29, Exhibit 1, p. 40 of 150).

On July 16 and July 17, 2008, Plaintiff was absent from work because of eye irritation.  He called into the reporting location to obtain sick leave for his absence.  Plaintiff was absent on July 18, 2008 but he did not call into the reporting location to request leave for the day (Docket No. 28, Exhibit 1, pp. 39 of 127, 40 of 127).  Plaintiff returned to work on July 21, 2008, he was placed on indefinite suspension without pay for the period of July 21 through August 6, 2008 (Docket No. 28, Exhibit 1, pp. 41 of 127, 45 of 127, Docket No. 29, Exhibit 1, p. 11 of 150).  On or about July 29, 2008, a message was left on Plaintiff's answering machine instructing him to call the reporting location (Docket No. 28, Exhibit 1, p. 43 of 127).  Plaintiff was out of town when his superior left the message so he did not return the call immediately (Docket No. 28, Exhibit 28, p. 45 of 127).

Plaintiff was permitted to return to work on August 6, 2008.  A meeting was conducted on that date to discuss the conditions of Plaintiff's continued employment[1] (Docket No.29, Exhibit 1, pp. 11 of 150 -12 of 150; Docket No. 28, Exhibit 1, pp. 47 of 127, 49 of 127, 50 of 127).  After the meeting, Plaintiff returned to work (Docket No. 28, Exhibit 1, p. 53 of 127).

Plaintiff underwent a second eye procedure and was absent from work on August 26 to September 4, 2008 (Docket No. 28, Exhibit 1, p. 57 of 127; Docket No. 29, Exhibit 1, p. 31 of 150).  He returned to work on full duty with no restrictions (Docket No. 28, Exhibit 1, pp. 61 of 127, 62

---

[1]

A letter dated August 29, 2008, was disseminated memorializing the discussion held in a meeting on August 6, 2008.  In this letter, the terms of Plaintiff's employment were enumerated.  First, Plaintiff was ordered to move his residence on or before October 15, 2008.  Second, Plaintiff's probationary period was extended three months.  Third, Plaintiff was ordered to participate  in extended day and scheduled overtime assignments.  Fourth, Plaintiff was ordered to maintain a maximum of 75% callout response.  Fifth, Plaintiff was ordered to present a physician's excuse for any future absence.  Sixth, Plaintiff was ordered to have 100% pager participation and response when on call.

3

of 127).  Plaintiff's physician released him to return to work on September 17, 2008 (Docket No. 29, Exhibit 1, p. 38 of 150).  Plaintiff was absent from work on September 18, 2008 (Docket No. 28, p. 66 of 127).  On September 22, 2008, Plaintiff's physician provided an excuse for Plaintiff's absences from work on September 18 through September 22, 2008 (Docket No. 29, Exhibit 1, p. 39 of 150).  On or about September 24, 2008, a meeting was conducted and Plaintiff was advised that his job performance did not meet expectations (Docket No. 28, Exhibit 1, pp. 54 of 127, 55 of 127, 58 of 127).  Five days later, Plaintiff was advised that he was being indefinitely suspended pending further disciplinary action for poor performance.  On October 1, 2008, the general operations manager forwarded a letter of termination to Plaintiff (Docket No. 28, Exhibit 1, p. 63; Docket No. 29, Exhibit 1, p. 23 of 150; Docket No. 29, Exhibit 1, p. 23 of 150).

Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission (OCRC) on November 3, 2008 (Docket No. 20, Exhibit 1).  The Equal Employment Rights Commission (EEOC) adopted the findings of OCRC and dismissed the charge on July 31, 2009 (Docket No. 20, Exhibit 1).  Plaintiff filed a timely lawsuit in federal court.  Defendant filed a Motion for Summary Judgment.

### SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Averill v. Gleaner Life Insurance Society*, 626 F. Supp.2d 756, 761 (N. D. Ohio 2009 (*citing Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2552 (1986)).  The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine

issue of material fact. *Id.* (*citing Celotex*, 106 S. Ct. at 2552-2553). The burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Id*. (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2511 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. *Id.* It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation,* 106 S. Ct. 1348, 1355 (1986)). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position. *Id.* (*citing Celotex, supra,* 106 S. Ct. at 2553).

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the non-moving party, all evidence will be construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor. *Id.* (*citing Eastman Kodak Company v. Image Technical Services, Incorporated,* 112 S. Ct. 2072, 2076 (1992)). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Id.* (*citing Celotex, supra,* 106 S. Ct. 2552).

### PLAINTIFF'S POSITION

1.  Plaintiff claims that he was disabled for a period of eight weeks. During that time, his ability to see, walk and work was impaired. Defendant failed to accommodate him because of his disability. Plaintiff argues that he is actually disabled and he is regarded as disabled by

Defendant.

2.     Plaintiff claims that he was an eligible employee under FMLA.  Defendant illegally denied

       him leave under FMLA.

3.     Plaintiff claims that Defendant retaliated against him because of his usage of leave under

       FMLA.

### DEFENDANT'S POSITION

1.     Defendant contends that Plaintiff is not disabled as defined under the ADA.

2.     Defendant contends that Plaintiff is not an eligible employee under FMLA.

3.     Defendant contends that it did not retaliate against Plaintiff for taking leave under FMLA.

### ANALYSIS

### 1. ADA

The ADA provides, in relevant part, that no covered entity shall discriminate against a

qualified individual with a disability because of the disability of such individual in regard to the

discharge of employees.  *Talley v. Family Dollar Stores of Ohio, Incorporated*, 542 F.3d 1099, 1104

-1105 (6th Cir. 2008) (*citing* 42 U.S.C. § 12112(a)).  If the plaintiff seeks to establish discrimination

through indirect evidence, the plaintiff is required to establish a prima facie case, followed by the

familiar *McDonnell Douglas* burden-shifting. *Id.* (*citing McDonnell Douglas Corporation v. Green,*

93 S. Ct. 1817, 1822 (1973)).  Once a plaintiff establishes a prima facie case of discrimination, the

burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its

actions. *Id.* (*citing Gribcheck v. Runyon,* 245 F.3d 547, 550 (6th Cir. 2001) (*quoting McDonnell*

*Douglas*, 93 S. Ct. at 1822 )).  If the defendant can satisfy its burden, the plaintiff must show by a

preponderance of the evidence that the proffered explanation is a pretext for discrimination.  *Id.*

To establish a prima facie case of discrimination under the ADA, a plaintiff must show "(1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform requirements of the job, with or without reasonable accommodation; and (3) who was discriminated against solely because of the disability." *Id.* (*citing Mahon v. Crowell,* 295 F.3d 585, 589 (6th Cir. 2002)). An individual with a disability, as defined by the ADA: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (2) has a record of such impairment,' or (3) is regarded by her employer as having such an impairment. *Id.* at 1105 (*citing Gruener v. Ohio Casualty Insurance Company,* 510 F.3d 661, 664 (6th Cir. 2008) (*quoting Sullivan v. River Valley School District,* 197 F.3d 804, 810 (6th Cir. 1999)); *see also* 42 U.S.C. § 12102(2)).

Physical or mental impairment means any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. 29 C. F. R. § 1630.2(h)(1) & (2) (Thomson Reuters 2010).

"Major life activities" means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C. F. R. § 1630.2(i) (Thomson Reuters 2010).

"Substantially limits" means unable to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or

7

duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C. F. R. § 1630.2(j)(i) & (ii) (Thomson Reuters 2010).  The following factors should be considered in determining whether an individual is substantially limited in a major life activity:  (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.  29 C. F. R. § 1630.2(h)(1) & (2) (Thomson Reuters 2010).

a.  **Individual with a disability.**

In the instant case, Plaintiff did not submit sufficient evidence from which the Magistrate can find that Plaintiff is a person with a disability as it is defined under the ADA.  Even assuming that glaucoma is a special sensory impairment, Plaintiff failed to present evidence of significant limitations resulting from the glaucoma.  Plaintiff worked until a week prior to surgery.  It was not contemplated that the affect of the surgery was permanent as the surgeon released Plaintiff to return to work after six weeks of recuperation.  Plaintiff has failed to set forth specific facts showing that there is a genuine issue as to the onset of glaucoma and substantial limitations in Plaintiff's ability to perform major life activities.

b.  **Record of such impairment**.

A record of an impairment means an individual has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."  *MX Group, Incorporated v. City of Covington,* 293 F.3d 326, 339 (6th Cir. 2002) (*see* 28 C. F. R. § 35.104(3)).  To succeed under this prong, plaintiff must show a record of "an

8

impairment that would substantially limit one or more of the individual's major life activities."  *Id.* (citing *Hilburn v. Murata Electronics North America*, 181 F.3d 1220, 1229 (11th Cir.1999)).

As explained in the preceding section, Plaintiff has not established in this record that the residual effects of his eye problems substantially limited his ability to engage in major life activities. Moreover, Plaintiff has failed to present specific facts that he was subjected to unlawful acts of discrimination by Defendant because of his glaucoma.

     c.     **Regarded as having such an impairment**

The ADA's regarded-as-disabled provision is designed to "stamp out the stereotyping of and discrimination against persons with disabilities in all their forms."  *Talley, supra*, 542 F. 3d at 1106 (citing *Ross v. Campbell Soup Company,* 237 F.3d 701, 706 (6th Cir. 2001)).  "An individual may fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties."  *Id.*  There are two apparent ways in which individuals may fall within this statutory definition:  (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.  *Id.* (citing *Sutton v. United Air Lines*, 119 S. Ct. 2139 (1999)).

Plaintiff asserts that he met the regarded-as prong; however, he has not presented specific facts that his supervisors and/or co-workers recognized that he had glaucoma or stereotyped him because he had glaucoma.  There is no indication in the record that Defendant ascribed to Plaintiff an inability to perform the functions of his job because he had glaucoma or that Defendant denied

him an accommodation before or after surgery.  Plaintiff has failed to present specific facts that would show that Defendant entertained misconceptions about Plaintiff.

Plaintiff cannot establish that he has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, has a record of such impairment or is regarded by his employer as having such an impairment.  Since Plaintiff cannot meet the first requirement of showing that he is disabled, the Magistrate need not articulate whether Plaintiff was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and whether Plaintiff was discriminated against solely because of the disability.  Plaintiff has failed to make a prima facie case for discrimination under ADA; consequently, the Magistrate recommends that the Court dismiss Plaintiff's claim of discrimination under ADA.

## 2. FMLA

The threshold question to asserting a claim under FMLA is whether Plaintiff is FMLA eligible.

The FMLA requires a covered employer to provide an eligible employee with up to twelve weeks of unpaid leave if such leave is required, *inter alia,* "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Carmen v. Unison Behavioral Health Group, Incorporated,* 295 F. Supp.2d 809, 813 (N. D. Ohio 2003) (*citing* 29 U.S.C. § 2612(a)(1)(D)).  A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* (*citing* 29 U.S.C. § 2611(11)).  The employee must provide the employer with "such notice as is practicable" of his or her need for FMLA leave.  *Id.* (*citing* 29 U.S.C. § 2612(e)(2)).  When it is

10

not practical for the employee to give his or her employer advance notice, such notice must ordinarily be timely given after the need for leave becomes apparent.  *Id.* (*citing* 29 C. F.R. § 825.303(a)).

A FMLA claim cannot be maintained by a plaintiff who is not an eligible employee.  *Staunch v. Continental Airlines*, 511 F. 3d 625, 629 (6th Cir. 2008).  The statute defines an eligible employee as an employee who has been employed for at least 12 months of service with respect to whom leave is requested and for at least 1,250 hours of service with such employer during the previous 12-month period.  *Id*. (*citing* 29 U. S. C. § 2611(2)(A)).  The determination of FMLA eligibility must be made on the date leave commences.  29 C. F. R. § 825.110(d)(Thomson Reuters 2010).

At the time of his surgery on March 31, 2008, Plaintiff had been employed by Defendant approximately five months.  Human resources department personnel certified on the date of his surgery, Plaintiff had only worked 841.5 hours.  The leave taken for Plaintiff's first surgery, which lasted from March 31 through June 13, 2008 was not FMLA protected as he was ineligible due to a shortage of hours.  This claim cannot be maintained by Plaintiff as he is not an eligible employee.

### 3.  Retaliation.

In the Amended Complaint, Plaintiff states that Defendant " interfered with and discriminated against him because of his usage and attempted usage of leave under FMLA."

The FMLA provides a private right of action to employees to protect their rights to such leave under two different theories:  the "interference" or "entitlement" theory, under which employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights, *Branham v. Gannett Satellite Information Network*, 619 F.3d 563, 568 (6th Cir. 2010)

(*citing* 29 U.S.C. § 2615(a)(1)); and the "retaliation" or "discrimination" theory, under which employers may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA, *Id.* (*citing* § 2615(a)(2); *See Hoge v. Honda of America Manufacturing,* 384 F.3d 238, 244 (6th Cir. 2004)).  To prevail on either her interference or retaliation claims, the plaintiff must prove that she or he was entitled to FMLA leave.  *Id.* (*citing Novak v. MetroHealth Medical Center,* 503 F.3d 572, 577-78 (6th Cir. 2007); *Edgar v. JAC Products,* 443 F.3d 501, 508 (6th Cir. 2006)).

The nature of Defendant's summary-judgment argument is that Plaintiff cannot establish this entitlement to FMLA.  Since Plaintiff cannot show that he was entitled to FMLA leave, his claims for interference and retaliation fail.

## CONCLUSION

For the foregoing reasons, the Magistrate recommends that the Court grant Defendant's Motion for Summary Judgment, dismiss the Complaint and terminate the referral to the Magistrate.


/s/Vernelis K. Armstrong
United States Magistrate Judge


Dated: December 13, 2010

## NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, as amended on December 1, 2009, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection

within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.